

Theodore R. Kulongoski, Governor

Department of Consumer and Business Services
Oregon Occupational Safety & Health Division (OR-OSHA)



May 24, 2006

City of Newport
169 SW Coast Hwy
Newport OR 97365

Subject:     Inspection No: 309419331
             Optional Report No: F9798-005-06

On December 22, 2005 and March 2 & 3, 2006 air sampling was performed to evaluate the working conditions to employees when they printed water bills on the Xerox Document Centre 555 machine in the copy room. The testing was performed to evaluate the concerns of a complaint regarding potential atmospheric hazards to employees during this process. Initially on December 22, 2005 screening samples where performed for a variety of air contaminants that potentially may have been generated from the copy machine. The sampling performed in March was a follow up to the initial testing to confirm the amount of contaminants found in December's screening samples.

## December 22, 2005:

The results of the monitoring for December 22, 2005 are listed below. The samples were taken to evaluate the atmosphere of the general area in the copy room. The sampling pumps were placed on a window ledge behind the printer to capture contaminants potentially emitted by the copier. The sampling was performed during the copying period that lasted approximately 23 minutes. The envelopes were tested to determine if there was any risk to contact contamination to the toner from the print.

| Employee/Location | Contaminant | Exposure Level | Permissible Limit |
|---|---|---|---|
| Copy room | Acetonitrile | 16 ppm | 40 ppm |
| Copy room | Acrolein | Less than detection limit of 0.60 ug | 0.1 ppm |
| Copy room | Benzene | Less than detection limit of 2.3 ug | 10 ppm |
| Copy room | Carbon black | 0.668 mg/m3 | 3.5 mg/m3 |
| Copy room | Formaldehyde | Less than detection limit of 0.20 ug | 0.75 ppm |
| Copy room | Nitrous oxide | Less than detection limit of 0.41 ug | 50 ppm |
| Copy room | Nitrogen dioxide | Less than detection limit of 0.64 ug | 5 ppm (C) |
| Copy room | Ozone | Less than detection limit of 8.00 ug | 0.1 ppm |
| Copy room | Trichloroethylene | Less than detection limit of 6.6 ug | 100 ppm |
| Billing Envelops | Chromium | Less than detection limit of 9.36 mg/m3 | 1 mg/m3 |

(C) =Ceiling limit: a ceiling limit must not be exceeded during any part of a workday
ug = microgram; ppm = parts per million; mg/m3 = milligrams per cubic meter

**March 2 & 3 2006:**

The results of the screening tests showed that acetonitrile and carbon black were present. The sampling on March 2 & 3, 2006 was specifically done to determine the concentration of acetonitrile and ultra fine particles. The concentration of ultra fine particles was tested to determine if particulate matter such as carbon black was being emitted by the copying machine. This testing was not specific to carbon black. The particulate count most likely included a variety of other materials. Ultra fine particles are less than 0.1 micron in diameter in size and they are not regulated by OR-OSHA since they are not considered to pose a health risk. The council chamber was the only area tested on March 3, 2006 as noted below. The sampling results are as follows:

| Employee/Location | Contaminant | Exposure Level | Permissible Limit |
|---|---|---|---|
| Laurel Brandt | Acetonitrile | Less than the detection limit of 14.4 ug | 40 ppm |
| Copy room | Acetonitrile | Less than the detection limit of 14.4 ug | 40 ppm |
| Folding room | Acetonitrile | Less than the detection limit of 14.4 ug | 40 ppm |
| Diane Sander's desk | Acetonitrile | Less than the detection limit of 14.4 ug | 40 ppm |
| Operator's position<br>-copier when printing<br>-copier not printing | Ultra fine particles | 3240 particles/cubic centimeter<br>2310 particles/cubic centimeter | N/A |
| Diane's Sander's desk<br>*at 0435 PM<br>*at 1144 am | Ultra fine particles | 4520 particles/cubic centimeter<br>1280 particles/cubic centimeter | N/A |
| Outdoors @ main door at 1116 am | Ultra fine particles | 8010 particles/cubic centimeter | N/A |
| Council chamber | Acetonitrile | Less than the detection limit of 14.4 ug | 40 ppm |

The samples were collected for approximately 8 hours to represent one workday. Various areas of the facility were tested to determine if the contaminants generated by the copy machine could migrate to other areas such as the folding room, to the finance department at Diane Sander's desk or to the council chamber. The personal sample collected from Laurel Brandt's breathing zone represents what a worker may personally be exposed to when copying the water bills.

Ultra fine particle results: The particulate count did increase at the copier during printing. The amount of particulates at Diane Sander's desk also increased as the day progressed. The results for both of these areas were well below the level found outdoors and therefore would not be considered out of the ordinary. In addition, as expected, the particulate count rose during the day within the facility. This would typically be expected based on the normal activity occurring through out the building.

Additional information:
During both December and March the doors to the copy room were left open and the fan was not operated during the printing session. General ventilation to the copy room was provided by the building's HVAC system. The copy room and the finance department were reportedly dedicated to separate HVAC units. A reading of 50 fpm (feet per minute) of air movement at the operator's position was recorded at the copier.

**Plaintiff's Exhibit 011**
**Page 2 of 3**

For your information, the sampling that was conducted in December used sampling media and a subsequent analytical method that were not necessarily intended to be used when sampling for acetonitrile. Therefore, the data was not reliable. Also, the position of the sampling media during that day was such that it was intended to determine the presence and concentration of various air contaminants common to copying processes, although at levels that would generally be well below applicable PELs. Those air contaminants included those listed in this letter. Based on these screening sample results additional sampling would be conducted at a later date for personal sampling (in the theoretical breathing zone of the employee(s) conducting the work practice in question). This is in fact what occurred on March 2, 2006. Those results did not indicated the presence of acetonitrile or any other air contaminants. This is not uncommon when sampling, as it is rare that air sampling results can be duplicated on different days.

The 8-hour TWA (time weighted average) PELs (permissible exposure limits) listed above are concentrations that are averaged over 8 hours that nearly all workers can be repeatedly exposed to day after day during a 40-hour work week. PELs are intended for personal exposures to workers and not for area sampling. The limits have been here as reference information only and not for compliance. Employers are responsible for ensuring that workers' exposures are kept below these PELs to prevent workers' from experiencing any ill health effects. The Oregon Safe Employment Act (OSEAct) provides standards which limit the concentration of contaminants workers may be exposed to in the workplace.

The real time sampling results for acetonitrile, performed on March 2, 2006 throughout the facility, using the Miran sampling instrument were not included in this report. The Miran sampling instrument was not functioning properly on the day of sampling, therefore the results could not be considered reliable.

Attached is a copy of a letter that was sent to Laurel Brandt. This copy should be maintained as a part of your permanent employee records. Your cooperation during the course of this inspection and testing was appreciated. Please contact Andrea McDaniel if you have any questions regarding this sampling information.

Andrea McDaniel
Sr. Health Compliance Officer
OR-OSHA Eugene Field Office
1140 Willagillespie Rd Suite 42
Eugene OR 97401-2101
(541) 686-7562

Doug Brandow
Health Enforcement Manager
OR-OSHA Eugene Field Office
1140 Willagillespie Rd Suite 42
Eugene OR 97401-2101
(541) 686-7562

cc:    Central Files
        Field Office Files
        Bay Clinic LLP

**Plaintiff's Exhibit 011**
**Page 3 of 3**



**BAY CLINIC, LLP**

PHYSICIANS AND SURGEONS

1750 THOMPSON ROAD
COOS BAY, OREGON 97420

541-269-0333
In State Toll Free
1-800-824-8896
FAX 541-269-7389

**Internal Medicine**
TERRANCE S. BACH, M.D.
GREG SCHANDELMEIER, M.D.
PETER LUND, M.D.
ALINA I. RIZEA, M.D.
H. ROBERT YEH, M.D.
GUOPING FENG, M.D.
BRIAN BARGER, F.N.P.

**Dermatology**
KATHLEEN M. BROWN, M.D.

**General Surgery**
ALLAN A. INOUYE, M.D.

**Obstetrics & Gynecology**
STEPHAN J. GROTH, M.D.
JULIE A. BUTTS, C.N.M., N.P.
KATIE RAMIREZ, C.N.M., N.P.

**Pediatrics**
TERRELL L. CLARKE, M.D.
MICHAEL V. LANZA, M.D.
DANIELLE PORTEOUS, M.D.
JON YOST, M.D.

**Allergy**
JOSEPH T. MORGAN, M.D.

**Administrator**
DANIEL E. WALSH

April 28, 2006

Ms. Nancy Boyer
Assistant City Manager
City of Newport Oregon
169 SW Coast Highway
Newport, OR

RE:   Diane Sanders

Dear Ms. Boyer:

Mrs. Sanders was seen on 4-12-06. She has been feeling much better during her leave of absence, and now that she has recovered from her recent surgery, she expresses a desire to return to work on 5-1-06. I believe it is entirely reasonable for her to do this. However, based on past occurrences, it would be advisable for her not to be exposed to the previously used paper, and handle only the 97 Bright. She has also asked for the following accommodations, which I believe are reasonable. This would consist of moving the folding machine out of the finance department and into the copy workroom, where there is some ventilation. She also requests that she be allowed to leave the copy workroom door open, for further improved ventilation.

I have asked Mrs. Sanders to keep me apprised of her progress after she returns to work.

Sincerely yours,

Joseph T. Morgan, M.D.

JTM/rc

**Plaintiff's Exhibit 012**
**Page 1 of 1**

## kent sanders

**From:** "kent sanders" <ksand13@earthlink.net>
**To:** "Nancy Boyer" <n.boyer@thecityofnewport.net>
**Cc:** <l.gadinas@thecityofnewport.net>
**Sent:** Monday, May 08, 2006 10:34 AM
**Subject:** LETTER DATED APRIL 28, 2006 FROM JOSEPH MORGAN, M.D. RE: RELEASE TO WORK FOR DIANE SANDERS

DATE: MAY 8, 2006

E-MAILED TO:
NANCY BOYER, ASSISTANT CITY MANAGER
NEWPORT, OREGON 97365

Nancy:

Dr. Joseph Morgan's letter dated April 28, 2006 had a typographical error. The numerical designation of the paper that he recommends should have been 92 Bright, not 97 Bright. 92 Bright is the paper that the City is already using.

Dr. Morgan's office will be faxing a corrected letter tomorrow, May 9, 2006.

\S\DIANE L. SANDERS\S\

CC: LEE GADINAS, FINANCE DIRECTOR
     CITY OF NEWPORT

5/8/2006

Plaintiff's Exhibit 013
Page 1 of 1

# CITY OF NEWPORT

169 SW Coast Hwy

NEWPORT, OREGON 97365

TDD/Voice 1-800-735-2900

OFFICE OF    Assistant City Manager

May 5, 2006

Ms. Diane Sanders
P.O. Box 1026
Waldport, OR 97394

Dear Diane:

The City received your release to return to work from Dr. Joseph Morgan on Friday, April 28, 2006 in which he stated that it would be advisable for you not to be exposed to the previously used paper, and handle only the 97 Bright.

The City has determined that it is not feasible for us to accommodate this request as it would require the elimination of all other paper in the workplace except for 97 Bright causing an undue burden on the City. Until this restriction is eliminated or another appropriate accommodation can be made to ensure that the work environment does not cause a potential health hazard to you, the City is unable to allow you to return to work.

If you have any questions regarding this information, please give me call at 5451-574-0602.

Sincerely,

CITY OF NEWPORT

Nancy J. Boyer
Assistant City Manager

cc: Lee Gadinas, Finance Director

Plaintiff's Exhibit 014
Page 1 of 1

# CITY OF NEWPORT

169 SW COAST HWY

## NEWPORT, OREGON 97365

TDD/VOICE 1-800-735-2900

OFFICE OF    Assistant City Manager

June 19, 2006

Ms. Diane Sanders
P.O. Box 1026
Waldport, OR  97394

Dear Diane:

As indicated in my previous letter to you dated, May 19, 2006, the City has not reinstated you to your position because Dr. Morgan has placed restrictions on your return to work that the City is unable to accommodate. In a follow-up letter from Dr. Morgan dated June 5, 2006, he reaffirms your restrictions regarding contact with paper which is less than 92 Bright. Enclosed is a copy of our letter to Dr. Morgan dated June 16, 2006 in which we request Dr. Morgan's assistance in making certain that the City is able to provide you with a working environment which will not cause you health concerns.

In regards to you health insurance benefits, as indicated in my letters to you dated April 25th and May 19th, if you wish to continue your health insurance past the end of April, you need to pay 100% of the premium amount (for yourself and one dependent this is $903.76/month). Although the City is not obligated in any way to continue to pay the employer's portion of the health insurance premium past April 2006, due to the fact that my letter to you dated May 19, 2006 was inadvertently sent to the wrong address, the City will pay 90% (the normal employer's portion) of the premium amount for May and, at this time, you would also need to pay 100% of the premium amount for June and July. For yourself and one dependent, this would require a total payment amount of $1,897.92, If the City does not receive payment from you for this amount by Wednesday, June 28, 2006, we will assume that you wish your insurance coverage to end as of the end of April.

Please let me know if you have any quest⋯              rmation at 541-574-0602.

Sincerely,

CITY OF NEWPORT

Nancy J. Boyer
Assistant City Manager

cc.: Lee Gadinas, Finance Director
     Allen O'Neal, City Manager

COMMERCIAL FISHING ✴ SPORT FISHING ✴ OCEAN BEACHES ✴ TOURIST CENTER ✴ MARINE SCIENCE CENTER ✴ SEAPORT ✴ LUMBER INDUSTRY
- AN EQUAL OPPORTUNITY EMPLOYER -

Plaintiff's Exhibit 015
Page 1 of 1

# CITY OF NEWPORT

169 SW COAST HWY

## NEWPORT, OREGON 97365

TDD/VOICE 1-800-735-2900

OFFICE OF

Assistant City Manager

July 10, 2006

Ms. Diane Sanders
P.O. Box 1026
Waldport, OR  97394

Dear Diane:

In response to your letter dated June 21, 2006, the City of Newport is still unable to reinstate you to your former position due to the restrictions which Dr. Morgan has placed on your return to work which the City is unable to accommodate.  There is no way that the City can insure that you are not exposed to paper which is not at a 92 Bright or higher level.  According to your physician, the City can not provide you with a safe working environment.

Regarding your health insurance, in my letter to you dated June 19, 2006, I stated that if the City did not receive payment (for your 10% portion for May and 100% of the premium amounts for June and July) from you by June 28, 2006, we would assume that you wish for your insurance coverage to end as of the end of April 2006.  As we have not heard from you or received payment, we have ended your health insurance as of the end of April 2006.  City/County Insurance Services will be sending you a letter outlining your COBRA rights.

Although you have not requested this as an option, you may wish to consider completing an application for Long Term Disability benefits.  If you would like to pursue this, please let me know and I will send you the application packet.

Please let me know in writing if you have any questions regarding this information.

Sincerely,

CITY OF NEWPORT

Nancy J. Boyer
Assistant City Manager

Cc:    Lee Gadinas, Finance Director
        Allen O'Neal, City Manager

COMMERCIAL FISHING * SPORT FISHING * OCEAN BEACHES * TOURIST CENTER * MARINE SCIENCE CENTER * SEAPORT * LUMBER INDUSTRY
- AN EQUAL OPPORTUNITY EMPLOYER -

**Plaintiff's Exhibit 016**
**Page 1 of 1**

DIANE L. SANDERS
PO BOX 1026
WALDPORT, OR 97394
PHONE: 541.563.6716

Nancy Boyer, Assistant City Manager
City of Newport
169 SW Coast HWY
Newport, OR 97365

5/2/06

Dear Nancy:

As we discussed in our telephone conversation on Friday, April 29, 2006, I have been
released to go back to work by Dr. Joseph Morgan, M.D. You are in receipt of his letter
dated April 28, 2006. I had Dr. Morgan's office fax you a copy on April 28, 2006. I
contacted Kay Keady in the Finance Department on that date and asked her to retrieve the
fax from the Finance Department. I asked her to put a copy in your mailbox as well as·
Lee Gadinas' "in basket" on his desk. Kay told me that Lee Gadinas was home ill on that
day.. She said that she would handle this for me.

In our telephone discussion on Friday, April 29, 2006 when you called me at home in the
afternoon, you stated that you were not in the office that day, and that you were working
from home. You said that you had been advised of the fax, but that you had not seen it
yet. You stated that I should not plan on coming back to work on May 1, 2006 because
you needed to have time to confer with my immediate boss Lee Gadinas, Finance
Director for the City of Newport. You also stated that you needed to talk to the insurance
carrier as well. You stated that the City would call me "early next week" to advise me
when to come back to work, and also to advise if the City could make the necessary
accommodations as outlined in Dr. Morgan's letter dated April 28, 2006.

At this time, I have also have a release to go back to work after surgery performed on
March 28, 2006 from my doctor in Eugene, Oregon, Frederick Green, M.D. My purpose
today is to deliver this doctor's release.

I await your response to my notification that I have been released to go back to work by
these two doctors.

Sincerely,

Diane L. Sanders

CC:    Lee Gadinas, Finance Director - City of Newport
       Allen O'Neal, City Manager for the City of Newport

Plaintiff's Exhibit 017
Page 1 of 1



**BAY CLINIC, LLP**

PHYSICIANS AND SURGEONS

1750 THOMPSON ROAD
COOS BAY, OREGON 97420

541-269-0333
In State Toll Free
1-800-824-8896
FAX 541-269-7389

**Internal Medicine**
WILLIAM D. KING, M.D.
TERRANCE S. BACH, M.D.
GREG SCHANDELMEIER, M.D.
PETER LUND, M.D.
ALINA I. RIZEA, M.D.
H. ROBERT YEH, M.D.
GUOPING FENG, M.D.
BRIAN BARGER, F.N.P.

**Dermatology**
KATHLEEN M. BROWN, M.D.

**General Surgery**
ALLAN A. INOUYE, M.D.

**Obstetrics & Gynecology**
STEPHAN J. GROTH, M.D.
JULIE A. BUTTS, C.N.M., N.P.
KATIE RAMIREZ, C.N.M., N.P.

**Pediatrics**
TERRELL L. CLARKE, M.D.
MICHAEL V. LANZA, M.D.
DANIELLE PORTEOUS, M.D.
JON YOST, M.D.

**Allergy**
JOSEPH T. MORGAN, M.D.

**Administrator**
DANIEL E. WALSH

May 9, 2006

Ms. Nancy Boyer
Assistant City Manager
City of Newport, Oregon
169 SW Coast Highway
Newport, OR 97365

RE: Diane Sanders

Dear Ms. Boyer:

This is to correct a typographical error in my letter dated April 28, 2006. In the third sentence I recommended that billing stock paper be changed from 87 Bright to a grade which she found that she could handle more comfortably. The letter of April 28th specified 94 Bright. This was a typographical error, and it should have read upgrading from 87 to 92 Bright when next ordered.

Sincerely yours,

Joseph T. Morgan, M.D.

JTM/rc

**Plaintiff's Exhibit 018**
**Page 1 of 1**



**BAY CLINIC, LLP**

PHYSICIANS AND SURGEONS

1750 THOMPSON ROAD
COOS BAY, OREGON 97420

541-269-0333
In State Toll Free
1-800-824-8896
FAX 541-269-7389

Internal Medicine
TERRANCE S. BACH, M.D.
GREG SCHANDELMEIER, M.D.
PETER LUND, M.D.
ALINA I. RIZFA, M.D.
H. ROBERT YEH, M.D.
GUOPING FENG, M.D.
BRIAN BARGER, F.N.P.

Dermatology
KATHLEEN M. BROWN, M.D.

General Surgery
ALLAN A. INOUYE, M.D.

Obstetrics & Gynecology
STEPHAN J. GROTH, M.D.
ERIC K. AMEND, M.D.
JULIE A. BUTTS, C.N.M., N.P.
KATIE RAMIREZ, C.N.M., N.P.

Pediatrics
TERRELL L. CLARKE, M.D.
MICHAEL V. LANZA, M.D.
DANIELLE PORTEOUS, M.D.
JON YOST, M.D.
BRIAN L. GUMBS, M.D.

Allergy
JOSEPH T. MORGAN, M.D.

Administrator
DANIEL E. WALSH

June 5, 2006

Ms. Nancy Boyer
Assistant City Manager
City of Newport Oregon
169 S.W. Coast Highway
Newport, OR 97365

RE:  Diane Sanders

Dear Ms. Boyer:

I spoke to Mr. Robert Radler about Mrs. Sanders this afternoon, and this letter is the result of that conversation.

Mrs. Sanders is anxious to return to work. Progress to date suggests that her hypersensitivity reactions can very likely be controlled by avoidance of the exposure which was originally incriminated, i.e., 84 Bright paper. According to information available to me, as communicated by Mrs. Sanders, she tolerates 87 Bright reasonably well, but 92 Bright or higher would be considered the safest for her. She is therefore released to return to work so long as exposure to 84 Bright grade of paper can be completely avoided, and as long as her work area is well ventilated. It would also be my recommendation that any 87 Bright paper still in stock be replaced with at least 92 Bright when the supply of 87 Bright is exhausted.

Sincerely yours,

Joseph T. Morgan, M.D.

JTM/rc

**Plaintiff's Exhibit 019**
**Page 1 of 1**

# KIRK W. MYLANDER
## ATTORNEY AT LAW

FACSIMILE
(503) 763-3945

TELEPHONE
(503) 763-3845

P.O. Box 1469
LAKE OSWEGO, OREGON 97035

Employed by the Legal Division of City County Insurance
Services

Tuesday, October 17, 2006

Ms. Diane Sanders
P.O. Box 1026
Waldport OR 97394

Dear Ms. Sanders,

We are in receipt of Randy Elmer's letter of August 10, 2006, which indicated that he was withdrawing as your attorney in the matter of your employment status with the City of Newport. As a result, I am writing directly to you. If you have retained new counsel please forward this correspondence to him or her.

Diane, I am writing to explain why the City of Newport cannot accommodate your health condition and allow you to return to work. The bottom line is this: if what your doctor says is true, it is impossible to make the City a safe workplace for you. The City cannot knowingly allow you to walk into an environment that the City knows your immune system cannot protect you from.

Dr. Morgan explained to us that you cannot tolerate exposure to paper graded below "92 Bright." Your former counsel, Mr. Elmer, advocating strongly on your behalf, argued that the City only needed to switch its paper supply to 92 Bright and install a new ventilation system. This recommendation cannot possibly protect you from all sub 92 grade paper. You see, even if the City changes its own paper supply, the City cannot control the grade of paper coming into the workplace from outside sources and third parties.

Further, Dr. Morgan has not been able to identify the chemical(s) in 87 Bright paper that you cannot tolerate. As a result, we cannot remove other paper types or office products that will cause you harm, nor can we identify safe substitutes. We do not know what types of substances in colored paper would cause you harm. Yellow pads, calendars and post-it notes could all potentially harm you.

In addition to copy machine fumes and paper sensitivity Dr. Morgan reports that you cannot tolerate perfumes or colognes. Even if the City were to ban all employees from wearing perfumes and colognes, the City cannot control whether visitors, vendors, and other guests wear them.

Plaintiff's Exhibit 020
Page 1 of 3

Dr. Morgan further advised the City that opening the window or increased ventilation would not help, because automobile exhau.    imes drifting in the window caused you    become so nauseated that you once thought you were suffering from carbon monoxide poisoning.  Accepting Dr. Morgan's diagnosis of the dangers exhaust fumes pose to you, the City could not improve air flow in City Hall even if the new windows could be opened; Dr. Morgan's advice also rules out venting air in from outside.

Due to the complexity of your case, the City took the extraordinary step of hiring an outside industrial hygienist to study and measure the safety of City Hall.  As you know OSHA invalidated its first and only test that found Acetonitrile present at the City's offices.  The OHSA technician used a charcoal tube to collect that air sample, which was a mistake that caused all results from that test to be unreliable.  However OSHA performed additional tests using the correct collection media and found no Acetonitrile in any of the air samples from the City's offices, proving there is no Acetonitrile in the copy room or anywhere else at the City.  We do not know what chemical affected your health, but we do know that it was not Acetonitrile.

We also know that the ventilation at City Hall is not the cause of your health issues.  The City's industrial hygienist measured airflow at the City and "found air flow conditions optimum for office conditions in the large room used to house the copier."  The measured airflow was 50 feet per minute, and the standard is no more than 50 feet per minute during the summer (and 30 fpm in winter).  In other words, the air in the copy room is flowing at the maximum allowable speed.

You should also know that when OSHA tested for Acetonitrile it also took air samples to test for ultra-fine particles that could be emitted during both the copying and the folding processes.  OSHA concluded that the amount of particles emitted during copying and/or folding were not a health hazard and demonstrated that there is no need for special exhaust ventilation.

Diane, the City of Newport has worked hard and incurred significant expense to do two things: 1) protect your health; and 2) identify any harmful substances at the City's offices.  To date, the City has protected your health by ensuring that you do not return to an office that Dr. Morgan cautioned was sure to harm you again, unless the offending substance was identified and removed.  On January 13, 2006, he wrote:

> [Diane Sanders'] "progressive physical illness appears to be directly related to an increasing and now severe sensitivity to fumes and odors as a result of her duties in the copy room and handling related materials, including the paper used in the Xerox machine. The only truly effective treatment available for a problem of this type is avoidance of the offending exposures... If she returns to the same level of exposure which she had been experiencing at work, a prompt recurrence can be expected." (Emphasis added).

The City simply cannot allow you to return to work until the substance which has negatively affected your health is identified and eliminated.  However, neither OSHA nor an independent industrial hygienist has been able to identify anything that could have affected your health.  Since the City's offices have been found to contain no harmful levels of substances by OSHA and by an independent hygienist, the City cannot identify what chemical to eliminate.

We cannot return you to work, Diane, because it is the same place you left.  The City has sought to identify and eliminate what ever it was that affected your health, but no one has been able to do so.  We think Dr. Morgan himself said it best when he explained that, "the only truly effective treatment available for a problem of this type is avoidance of the offending exposures."

2

**Plaintiff's Exhibit 020**
**Page 2 of 3**

The City spent a lot of money on your case, Diane. We know that you have incurred medical bills, lost time, and have been frustrated with your health. Rather than continue to be at odds, we have tried to fully explain our actions and our reasoning. At this point, we believe it would be best for you and the City to make a clean break and each go their separate way.

The City wants to recognize your years of service, your hard work, and your commitment to making Newport a better place for everyone. For those things the City is willing to consider offering you a severance payment, of a yet to be determined amount. In exchange, you would need to be willing to sign settlement agreements to conclude your workers compensation claim and settling all aspects of your employment relationship with the City (agreeing not to file lawsuits against the City for anything related to your employment there).

We do not want to invest more time and effort in resolving our relationship with you, if you are determined otherwise. If you would be willing to explore the possibility of finding some mutual ground and resolving our differences, we would encourage you to call or write and simply indicate that you are willing to talk further. You could talk directly to me, you could call Nancy Boyer, or we could agree via correspondence to meet with a professional mediator. We are open to finding a means of communication that you are comfortable with in order to resolve this situation and move forward.

Thank you for your service to the City and your consideration of this offer to communicate further. If you have any questions feel free to contact me directly (if you don't have an attorney) by phone or email.

Sincerely,

Kirk Mylander
Attorney at Law

cc:     Nancy Boyer
        City of Newport

3

Plaintiff's Exhibit 020
Page 3 of 3



**BAY CLINIC, LLP**

PHYSICIANS AND SURGEONS

750 THOMPSON ROAD
COOS BAY, OREGON 97420

541-269-0333
In State Toll Free
1-800-824-8896
FAX 541-269-7389

Internal Medicine
TERRANCE S. BACH, M.D.
GREG SCHANDELMEIER, M.D.
PETER LUND, M.D.
ALINA I. RIZEA, M.D.
H. ROBERT YEH, M.D.
GUOPING FENG, M.D.
BRIAN BARGER, F.N.P.

Dermatology
KATHLEEN M. BROWN, M.D.

General Surgery
ALLAN A. INOUYE, M.D.

Obstetrics & Gynecology
STEPHAN J. GROTH, M.D.
ERIC K. AMEND, M.D.
JULIE A. BUTTS, C.N.M., N.P.
KATIE RAMIREZ, C.N.M., N.P.

Pediatrics
TERRELL L. CLARKE, M.D.
MICHAEL V. LANZA, M.D.
DANIELLE PORTEOUS, M.D.
JON YOST, M.D.
BRIAN L. GUMBS, M.D.

Allergy
JOSEPH T. MORGAN, M.D.

Administrator
DANIEL E. WALSH

June 20, 2006

Ms. Nancy J. Boyer
Assistant City Manager
City of Newport
169 S.W. Coast-Highway
Newport, OR   97365

RE: Diane Sanders

Dear Ms. Boyer:

I will attempt to respond to the specific questions which you asked in your letter of June 16 regarding Mrs. Sanders.

1:     Mrs. Sanders has been sensitized to some product or products contained in the incriminated paper in questions. Sensitivities of this type are not entirely unusual and in fact have become increasingly more common to a variety of household and workplace products.

2:     Without the ability to obtain a precise chemical analysis of the various grades of paper, this is a question which cannot be answered at this time. Concerns that there might be other in-office exposures could be a possibility, but there is no way to verify that at the present time. It should be noted that recent epidemiologic surveys estimate that up to 25% of the population has the potential to become sensitized by exposure to various scents, fumes, and odors. In some cases this happens after a single acute exposure and in other cases it is the result of a long term low-grade exposure. It is also estimated that as many as 3 to 5% of the population will develop a severe enough sensitivity to require significant accommodation to avoid exposure. In this regard, there would be a significant concern that other city employees might also eventually become affected.

3:     Again, without a chemical breakdown of all the chemical ingredients in the paper making process, I am unable to answer this question.

4:     The answer to this item is also unknown for the same reason.

**Plaintiff's Exhibit 021**
**Page 1 of 2**