IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| DIANE L. SANDERS, | ) | |
| Plaintiff, | ) | Civ. No.  07-00776-TC |
| vs. | ) | |
| | ) | OPINION AND ORDER |
| CITY OF NEWPORT, an Oregon Municipal Corporation, and NANCY BOYER, in her individual capacity, | ) | |
| Defendants. | ) | |

COFFIN, Magistrate Judge.

Before the court is defendants' Motion for Summary Judgment (#22) and Amended Motion to Strike (#47).  For the reasons that follow, summary judgment is granted on plaintiff's workers' compensation claim and otherwise denied.  Defendants' Amended Motion to Strike is denied.

BACKGROUND

The record discloses the following facts.  Plaintiff worked for defendant City of Newport as a billing clerk for approximately eight years.  Sanders Depo., 28.  She was

1 Opinion and Order

terminated in January 2007.[1]  Sanders Aff., Ex. 11.  Until November 2005, plaintiff was responsible for printing water and sewer bills for the city, a process that took approximately 90 minutes per week.  Sanders Depo., 29; Brown Depo., 19.

Prior to November 2005, plaintiff reported to her supervisor that she had a chemical sensitivity triggered by the bill printing process.  Sanders Depo., 46, 59.  At plaintiff's request her supervisor allowed her to leave a door open while printing bills, and with a colleague's help, she moved her printer away from her workspace.  Sanders Depo., 62.  Plaintiff requested that Assistant City Manager Nancy Boyer provide her with a respirator to use during printing.  Boyer did not provide plaintiff with a respirator, but, upon plaintiff's request, Boyer reassigned the printing duties.  Sanders Aff. Ex. 1, 2; Brown Depo., 19.

Plaintiff's husband filed an Oregon Occupational Safety and Health Administration (OR-OSHA) claim on plaintiff's behalf and requested a test of the air quality at City Hall.  Sanders Depo., 105-06; Boyer Depo., 83-84.

Based on plaintiff's reaction to the printing process, Boyer raised concerns to the city's Safety Committee, at a November 23, 2005, meeting over which Boyer presided.  Boyer

---

[1] The parties dispute the date of plaintiff's termination, but my review of the record does not indicate an issue of fact on this point.  Plaintiff's January 8, 2007, letter of termination states clearly, "the City is terminating your employment effective today, January 8, 2007."  Sanders Aff., Ex. 11.  Defendants suggest that plaintiff was instead terminated on October 17, 2006, citing a letter sent to plaintiff from the city attorney notifying plaintiff that the city could not accommodate her medical restrictions and offering to explore a settlement to end the parties' relationship on mutually agreeable terms; however, this letter did not alter plaintiff's status as an employee of the city.  See Bannon Aff., Ex. 20.

2 Opinion and Order

Depo., 68-69.  The city hired an industrial hygienist to test for air quality problems in the copy room, and the hygienist reported no emissions that would correlate with health problems.  Boyer Depo. 73.

In December 2005, plaintiff began wearing a latex glove when she handled papers or mail; the skin on her fingers was red and cracked.  Sanders Depo., 70-71.  That month, the city began to transition to a higher grade of paper (94 grade stock).  Also in December, an OR-OSHA inspector tested the air and found levels of carbon black and acetonitrile.  Doyle Aff., Ex. 11.

In January 2006, plaintiff visited Dr. Joseph Morgan, an allergy specialist.  Morgan Depo., 5, 52.  Dr. Morgan diagnosed plaintiff with Multiple Chemical Sensitivity (MCS) and attributed her problems to workplace exposure.  Morgan Depo., 52.  Dr. Morgan wrote a letter to the city stating that plaintiff required a one-month leave of absence due to health reasons.  Boyer Depo., 74-75.  Dr. Morgan also recommended that the city improve ventilation in the copy room, switch to a higher paper grade, and relieve plaintiff from handling returned bills until the after the new paper was phased in.  Morgan Depo., 52.

Plaintiff went on medical leave on January 18, 2006, and on January 23, 2006, she filed a workers' compensation claim.  Sanders Depo., 74, 111; Boyer Depo., Ex. 22.  During plaintiff's medical leave, Boyer advised her not to enter City Hall.  Sanders Depo., 103.  In March, 2006, OR-OSHA retested the air and found that acetronile and other contaminants were no longer present.  Boyer Depo., Ex. 11.

Plaintiff's leave was extended because she underwent a

hysterectomy. Sanders Depo., 77. On April 25, 2006, Boyer apprised plaintiff that the city had placed her on FMLA and OFLA leave as of January 19, 2006, and that her leave period expired. Sanders Aff., Ex. 3.[2] Boyer stated that plaintiff required a certification of fitness for duty prior to returning to work. Id. On April 28, 2006, Dr. Morgan released plaintiff to work and requested four accommodations: (1) plaintiff refrain from handling previously used paper; (2) the city use 92 grade[3] stock paper; (3) the city move the folding machine to a better-ventilated space; and, (4), the city permit plaintiff to have the copy workroom door open. Doyle Aff., Ex. 6.

On May 5, Boyer stated that the city received plaintiff's medical release, but the city could not reinstate her because it could not implement Dr. Morgan's recommendations. Sanders Aff., Ex. 5. On June 5, Dr. Morgan clarified the release restrictions, stating that plaintiff could tolerate 87-grade paper for short periods but should regularly come into contact with 92-grade paper or higher. Boyer Depo., 98. Boyer requested further information from Dr. Morgan, initiating a limited interactive process between the city and plaintiff and Dr. Morgan concerning the particular types of limitations that applied to plaintiff's condition.

---

[2] Defendant moved to strike this evidence, along with Sanders Aff. Exs. 6, 7 and 9 and Doyle Aff., Exs. 6 and 8, on hearsay grounds. Because each is probative of the declarant's state of mind and relevant to the interactive process between an employee seeking an accommodation and the employer (see discussion infra), I consider the contested evidence for those reasons.

[3] Initially, the letter stated "97 grade," which was later corrected to "92 grade." Boyer Depo., 85.

On June 19, Boyer again informed plaintiff that the city could not accommodate Dr. Morgan's restrictions. Sanders Aff., Pl. Ex. 6. On June 20, Dr. Morgan wrote to Boyer concerning Boyer's previous request for information and explained that he could not answer her questions unless he was provided a breakdown of chemicals in the paper used by the city. Doyle Aff., Ex. 8. Boyer concluded that Dr. Morgan could not discern which chemicals caused plaintiff's reactions, and the city could not ensure that plaintiff could be protected from reaction-inducing chemicals. Boyer Depo., 107, 109.

On June 21, plaintiff requested that the City Manger, Allen O'Neal, reinstate her to her former position. Sanders Aff., Ex. 7. Boyer informed O'Neal that plaintiff had been on leave because of concerns about chemicals in the paper. O'Neal Depo., 22. O'Neal testified that, according to his understanding of plaintiff's condition, she could not work in spaces not screened for offending chemicals, lest she be exposed to reaction-inducing agents from colleagues' colognes, furniture, carpet, or draperies. O'Neal Depo., 45.

In October, plaintiff again demanded reinstatement and explained that she believed the city fulfilled the paper-grade medical release requirement by switching to 94-grade paper. Sanders Aff., Ex. 9. The city's legal counsel responded in a letter, stating that it was not possible for the city to accommodate her, inasmuch as Dr. Morgan could not identify chemicals that caused her reaction, and the city could not restrict her workplace exposure to chemicals that might cause her reactions. Sanders Aff., Ex. 10.

5 Opinion and Order

On December 20, 2006, plaintiff filed a civil rights complaint with the Oregon Bureau of Labor and Industries (BOLI), and with the Equal Employment Opportunity Commission (EEOC). Sanders Aff., Ex. 13, 14.

On January 8, 2007, the city informed plaintiff that it could not accommodate medical restrictions imposed by Dr. Morgan, and it was therefore terminating her. Sanders Aff., Ex. 11. after a post-termination hearing, the city upheld the termination. Sanders Aff., Ex. 12. On March 8, 2007, plaintiff received a right to sue letter from BOLI, and on April 24, 2007, plaintiff received a right to sue letter from EEOC. Sanders Aff., Ex. 13, 14.

Plaintiff thereafter filed this action. She alleges a number of claims against the city: discrimination on the basis of a disability, in violation of 42 U.S.C. § 12112 and Or. Rev. Stat. § 659A.112; state and federal family leave law, 29 U.S.C. §§ 2614-2615 and Or. Rev. Stat. § 659A.153; safe workplace anti-retaliation law under Or. Rev. Stat. § 654.062(5); and, workers' compensation anti-discrimination law under Or. Rev. Stat. § 659A.040. She also asserts a claim for wrongful discharge under Oregon tort law.[4] Defendant City of Newport moves for summary judgment on all claims. For the reasons that follow, summary judgment is granted on plaintiff's workers' compensation claim and otherwise denied.

---

[4] Plaintiff withdraws her First Amendment retaliation claim against Nancy Boyer. Plaintiff's Response, 7. Because all remaining claims are asserted against the City of Newport only, Ms. Boyer is dismissed from this case. Hereafter, the term "defendant" refers to City of Newport only.

6 Opinion and Order

STANDARD

Summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). On a motion for summary judgment, all reasonable doubt as to the existence of a genuine issue of fact is resolved against the moving party, Hector v. Wiens, 533 F.2d 429, 432 (9th Cir. 1976), and any inferences drawn from the underlying facts are viewed in the light most favorable to the nonmoving party. Valadingham v. Bojorquez, 866 F.2d 1135, 1137 (9th Cir. 1989).

The initial burden is on the moving party to point out the absence of any genuine issue of material fact. Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. Celotex Corp. v. Catrett, 477 U.S. 317 (1986).

Rule 56(c) mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof. Id. at 323-24.

7 Opinion and Order

ANALYSIS

Disability Discrimination Claims

I turn first to plaintiff's state and federal claims of disability discrimination.[5]  The relevant statutes prohibit an employer from discriminating "against a qualified individual with a disability because of the disability." 42 U.S.C. § 12112(a). Thus, to state a prima facie case, plaintiff must show that (1) she is a disabled person within the meaning of the ADA; (2) she is a qualified individual, meaning she can perform the essential functions of her job; and, (3) she suffered an adverse employment action because of her disability.   See Kennedy v. Applause, 90 F.3d 1477, 1481 (9th Cir. 1996).

In order to warrant protection under the federal or state standard, plaintiff must first demonstrate that she suffers from a physical or mental impairment that substantially limits one or more of her major life activities, that she has a record of such impairment, or that her employer regarded her as having such an impairment. 42 U.S.C. § 12102(2); Barnett v. U.S. Air, Inc., 228 F.3d 1105, 1113 (9th Cir. 2000) (en banc), vacated on other grounds, 535 U.S. 391 (2002); Or. Rev. Stat. § 659A.100(1)(a). "'Major life activities' means functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working."   29 C.F.R. § 1630.2(I).

Plaintiff asserts that she qualifies as "disabled" under

---

[5] Oregon disability law is construed to the extent possible to follow similar ADA provisions.  Evans v. Multnomah County Sheriff's Office, 57 P.3d 211, 213 (Or. App. 2002), rev. denied, 63 P.3d 27 (Or. 2003).

federal and state standards because defendant regarded her as being disabled.[6]    In order to be "regarded" as disabled, plaintiff must demonstrate that she

> (1) Has a physical or mental impairment that does not substantially limit major life activities but is treated by a covered entity as constituting such limitation;

> (2) Has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or

> (3) . . . is treated by a covered entity as having a substantially limiting impairment.

29 C.F.R. § 1630.2(l).

In order to demonstrate a substantial limitation on the major life activity of "working," plaintiff must demonstrate that she is restricted in her ability to perform either a single class of jobs, or a broad range of various types of employment as compared to an average person having comparable training, skills, and abilities. 29 C.F.R. § 1630.2(j)(3)(I); Or. Admin. R. § 839-006-0205(6)(b). The court may consider factors such as

> (A) [t]he geographical area to which the individual has reasonable access;

> (B) [t]he job from which the individual has been disqualified because of an impairment, and the number and types of jobs utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (class of jobs); and/or

---

[6] In her First Amended Complaint, plaintiff alleges also that she qualifies as "disabled" on the two other available theories under 42 U.S.C. § 12102(2), namely that suffers from a physical or mental impairment that substantially limits one or more of her major life activities, and that she has a record of such impairment.  Plaintiff did not develop those theories in her brief, and I proceed on the assumption that her disability discrimination claims rest on the "regarded as" theory.

9 Opinion and Order

> (C) [t]he job from which the individual has been
> disqualified because of an impairment, and the
> number and types of other jobs not utilizing similar
> training, knowledge, skills or abilities, within
> that geographical area, from which the individual is
> also disqualified because of the impairment (broad
> range of jobs in various classes).

29 C.F.R. § 1630.2(j)(3)(ii).

An impairment "substantially limits" an individual who becomes, as a result of the impairment,

> (i) [u]nable to perform a major life activity that
> the average person in the general population can
> perform; or

> (ii) [s]ignificantly restricted as to the condition,
> manner or duration under which an individual can
> perform a particular major life activity as compared
> to the condition, manner, or duration under which the
> average person in the general population can perform
> that same major life activity.

29 C.F.R. § 1630.2(j)(1); see also Or. Rev. Stat. § 659A.100(2)(d)(B) (describing substantially similar standard). Factors used in considering whether a limitation is "substantial" include:

> (i) The nature and severity of the impairment;

> (ii) The duration or expected duration of the
> impairment; and

> (iii) The permanent or long term impact, or the
> expected permanent or long term impact of or
> resulting from the impairment.

29 C.F.R. § 1630.2(j)(2); Or. Admin. R. § 839-006-0212. When an impairment renders activities more painful or difficult but does not prevent the activity outright, the fact of a dimunition in ability will not, in itself, constitute a substantial limitation. Thornton v. McClatchy Newspapers, Inc., 292 F.3d 1045, 1046 (9th Cir. 2002).

10 Opinion and Order

Based on the record before me, plaintiff has demonstrated the existence of an issue of fact that could permit the conclusion that her employer treated her as having a "substantial[] limit[ation on a] major life activity" or a "substantially limiting impairment" despite the fact that she had no such limitation. See 29 C.F.R. § 1630.2(l), (3).

A number of statements by agents of the city could indicate to a juror that the city understood plaintiff's multiple chemical sensitivity to substantially limit the major life activity of working. The city indicated because it did not know each particular chemical cause of plaintiff's reactions, there was no way in which plaintiff could work in the office free from exposure to reaction-inducing agents. Furthermore, it perceived plaintiff's condition as prohibiting her from touching any paper graded lower than 92, which would rule out touching mail or paper from any third party who used low-grade paper. The city assumed that plaintiff's condition prohibited her from touching money or from coming into contact with perfumes or colognes. Sanders Aff, Ex. 10. O'Neal, the City Manager, assumed that plaintiff could not work in spaces shared by other people or containing furniture, carpet, or draperies. O'Neal Depo., 45.

Plaintiff strenuously objects to the assumption that the non-paper limitations were recommended by Dr. Morgan and argues that the city has exaggerated plaintiff's limitations in order to substantiate defendant's argument that her limitations were beyond accommodation. Plaintiff instead asserts that the only accommodations that Dr. Morgan ultimately required -- use of 92-grade paper and adequate ventilation -- were in place by the time

11 Opinion and Order

1  she was released to work.

2      If defendant is taken at its own words, it becomes clear that

3  a juror could conclude that the city regarded plaintiff as having

4  a condition that substantially limits her ability to work, inasmuch

5  as plaintiff would be disqualified from any job at a conventional

6  office that involved work with colleagues, from handling paper that

7  was not high-grade, and from handling money.   Such limitations

8  would restrict anyone's ability to perform either a single class of

9  jobs, or a broad range of various types of employment as compared

10 to an average person having comparable abilities.   The same

11 evidence raises a triable issue concerning whether defendant

12 treated plaintiff as having a substantially limiting impairment.

13     Because defendant does not challenge the second element of

14 plaintiff's prima facie case, i.e., that she is qualified for her

15 job, I turn to the third element, whether defendant retaliated

16 against her for requesting accommodations or failed to accommodate

17 her limitations.  Here, plaintiff has again demonstrated a triable

18 issue of fact.  Plaintiff points to evidence in the record limiting

19 plaintiff's restrictions to sufficient ventilation and use of 92-

20 grade paper, conditions that the city had undertaken.  Facts in the

21 record could support plaintiff's theory that defendant

22 overdetermined the limitations imposed by Dr. Morgan so as to

23 require plaintiff to be sequestered from all foreign substances and

24 work under sterile conditions.   That inference could, in turn,

25 support plaintiff's theory that she was terminated on the basis of

26 her disability.

27     Once plaintiff establishes a prima facie case, the burden

28 shifts to defendant to demonstrate a legitimate, nondiscriminatory

basis for its adverse employment action.  McDonnell Douglas Corp.
v. Green, 411 U.S. 792 (1973); Snead v. Metro. Prop. & Cas. Ins.,
237 F.3d 1080, 1092-93 (9th Cir. 2001).  After the city puts forth
legitimate, non-discriminatory reasons for terminating plaintiff,
she must demonstrate an issue of fact on the question whether
proffered reasons were a pretext for disability discrimination.
See Snead, 237 F.3d at 1093.

Defendant contends that plaintiff's limitations are indeed so
expansive and severe that they cannot be reasonably accommodated.
Thus, defendant argues, the lack of reasonable accommodation
provides a defense whether or not plaintiff qualifies as disabled
under the ADA.  In support of this argument, defendant cites Heaser
v. Toro Co., 247 F.3d 826 (8th Cir. 2001).  There, the plaintiff
suffered from chemical sensitivity, and her work-release
restrictions included nonexposure to plastics, copiers and copier
fumes, carbonless paper, and perfumes.  The court found that the
employer could not completely avoid exposing the plaintiff to
carbonless paper, and on that basis, no reasonable accommodation
was available.  Id. at 832.

Here, however, the applicable limitations are disputed.  As
explained above, plaintiff contends that, ultimately, Dr. Morgan
recommended only that the city switch to 92-grade paper and provide
sufficient ventilation, whereas defendant states that all of Dr.
Morgan's proposed restrictions were required and impossible to
implement.  On this record, I cannot conclude that no reasonable
accommodation is available as a matter of law.

Even if defendant successfully proffered a legitimate reason
for terminating plaintiff, evidence in the record would support an

13 Opinion and Order

argument that the proffered reason is pretextual. Defendant's
insistence on a broad interpretation of plaintiff's limitations,
despite attempts by plaintiff to explain that her needs could be
met by less severe release restrictions, could permit a factfinder
to infer that defendant turned a deaf ear to plaintiff in the
limited interactive process that led to defendant's conclusion that
her condition was beyond any reasonable accommodation. See
Barnett, 228 F.3d at 1114-15 ("The interactive process requires
communication and good-faith exploration of possible accommodations
between employers and individual employees. The shared goal is to
identify an accommodation that allows the employee to perform the
job effectively.  Both sides must communicate directly, exchange
essential information and neither side can delay or obstruct the
process.").  This theory, in turn, could support a conclusion that
defendant's proffered reason for her termination (inability to
accommodate) served as a pretext for her termination on the basis
of a disability.

    In sum, plaintiff has raised a triable issue concerning
whether she qualifies as "disabled" under federal and state law.
Summary judgment on these claims is denied.


FMLA and OFLA Claims

(1) FMLA

    To preserve the availability of statutorily-created rights,
and to enforce them, Family Medical and Leave Act (FMLA) creates
two types of claims: interference claims, in which an employee
asserts that his employer denied or otherwise interfered with his
substantive rights under the Act (including the right to be

14 Opinion and Order

reinstated to a former position after FMLA leave), and retaliation claims, in which an employee asserts that his employer discriminated against him because he engaged in activity protected by the Act. 29 U.S.C. § 2615(a)(1, 2); 29 C.F.R. § 825.220(c).

Plaintiff does not dispute that she was granted all requested leave. Rather, she asserts that defendant (1) interfered with her ability to take FMLA leave by failing to restore her to her position after she returned FMLA leave, and (2) retaliated against her for taking FMLA leave. Defendant asserts that plaintiff was terminated simply because the city was unable to provide her with a safe working environment that complied with Dr. Morgan's restrictions.

A.    FMLA Interference

Pursuant to 29 U.S.C. section 2614(a), a qualifying employee has a right to return to his or her job or an equivalent job after using protected FMLA leave. In defendant's view, plaintiff could not perform the essential functions of her job without running afoul of the restrictions imposed by Dr. Morgan. See Farrell v. Tri-Metropolitan Transp. Dist., No. CV 04-296-PA, 2006 WL 1371656, *2, (D. Or., May 15, 2006) (quoting 29 C.F.R. § 825.214(b)) ("An employee who is unable to perform the essential functions of the position following the leave period has 'no right to restoration to another position under the FMLA.'" ). Defendant understands Dr. Morgan to have required workplace conditions that ensured that plaintiff would not handle low-grade paper, and they assert that such a condition would be impossible to maintain. Defendant further contends that because Dr. Morgan did not isolate particular

15 Opinion and Order

chemicals that caused plaintiff's adverse reactions, defendant could not create a workplace environment that safeguarded plaintiff from reaction-inducing substances.

Plaintiff contends that the record discloses a genuine issue of material fact concerning whether she could perform the essential functions of her job under the conditions imposed by Dr. Morgan. Plaintiff contends that defendant employed a strategically broad understanding of Dr. Morgan's work release recommendations in order to avail themselves of an impossibility defense. As discussed above, plaintiff asserts that the two essential conditions eventually communicated by Dr. Morgan, viz., that the city use 92 grade paper or higher and ensure proper ventilation to accommodate plaintiff. Plaintiff further explains that in light of the city's transition to 94 grade paper and the availability of adequate ventilation, she is able to return to work despite her MCS diagnosis.

Plaintiff has demonstrated the existence of a genuine issue of material fact concerning whether she was not reinstated to her former position in violation of FMLA. Summary judgment on this claim is denied.

B.  FMLA Retaliation

Plaintiff further contends that defendant retaliated against her for taking FMLA leave.[7]  In order to withstand summary

_____

[7]The Ninth Circuit Court of Appeals has left open the issue of whether McDonnell Douglas analysis applies in an anti-retaliation action under § 2615(a)(2). Xin Liu v. Amway Corp., 347 F.3d 1125, 1135, 1136 n. 10 (9th Cir. 2003). In the absence of any mandatory authority requiring the court to apply the burden-shifting analysis of McDonnell Douglas, I proceed by inquiring whether the record

16 Opinion and Order

judgment, plaintiff must demonstrate the existence of a genuine issue of material fact with respect to the three elements of an FMLA retaliation claim: (1) plaintiff took FMLA leave; and (2) she was subject to an adverse employment action (3) that was motivated by the fact that she took FMLA leave. Bachelder v. America West Airlines, Inc., 259 F.3d 1112, 1125 (9th Cir. 2001). The parties do not dispute that plaintiff took FMLA leave and was terminated. Defendant asserts that the record discloses no genuine issue of material fact concerning the city's motivation for terminating her. Rather, defendant asserts, the record indicates that no one from the city told plaintiff that she was being terminated in response to her FMLA leave request, and the city could not accommodate the recommendations that, in the city's view, Dr. Morgan had imposed.

Plaintiff need not demonstrate that the city reported to her that her termination was caused by her FMLA leave in order to demonstrate the existence of a genuine issue of material fact concerning retaliation. Rather, a termination decision based on evidence susceptible to a range of interpretations requires "careful analysis for possible impermissible motivations[.]" See Xin Liu v. Amway Corp., 347 F.3d 1125, 1136 (9th Cir. 2003) (termination decisions based on subjective evaluations require such analysis "because such evaluations are particularly susceptible of abuse and more likely to mask pretext") (internal quotation marks omitted).

On this record, a number of factors, when read as a whole,

discloses a genuine issue of material fact concerning whether plaintiff was terminated due to her FMLA requests. But see Price v. Multnomah County, 132 F. Supp. 2d 1290, 1296 (D. Or. 2001) (applying burden-shifting analysis in FMLA retaliation claim).
17 Opinion and Order

raise a triable issue of fact. In particular, defendant's insistence on maximalist interpretation of Dr. Morgan's recommendations could allow an inference that it seeks a pretext to disguise a prohibited basis for terminating plaintiff. Further, the timespan between plaintiff's FMLA leave and termination is relatively short, allowing an inference that the adverse employment action was associated with plaintiff's leave-taking. See generally Bryson v. Regis Corp., 498 F.3d 561, 571 (6th Cir. 2007) (in FMLA retaliation claim, "proximity in time between the protected activity and the adverse employment action may constitute evidence of a causal connection"). Summary judgment on this claim is denied.

(2) OFLA, Failure to Reinstate

OFLA requires that an eligible employee be restored to his position at the conclusion of her leave:

> After returning to work after taking family leave under the provisions of ORS 659A.150 to 659A.186, an eligible employee is entitled to be restored to the position of employment held by the employee when the leave commenced if that position still exists, without regard to whether the employer filled the position with a replacement worker during the period of family leave.

Or. Rev. Stat. § 659A.171(1).

Defendant argues that the Oregon Revised Statutes provide redress only for an employer's failure to grant OFLA leave, not for failure to reinstate. Defendant begins with Or. Rev. Stat. 659A.885(1), which provides, in part, that "[a]ny individual claiming to be aggrieved by an unlawful practice specified in subsection (2) of this section may file a civil action in circuit court." Oregon Revised Statute section 659A.885(2), in

18 Opinion and Order

turn, states that an employee who claims to have been aggrieved by an OFLA violation may bring a legal action against the employer. However, under OFLA, only the denial of leave constitutes an "unlawful practice." See Or. Rev. Stat. § 659A.183 ("A covered employer who denies family leave to an eligible employee in the manner required by ORS 659A.150 to 659A.186 commits an unlawful employment practice."). Thus, in defendant's view, failure to reinstate is not redressable under Oregon law.

The reasoning set forth in Yeager v. Providence Health System Oregon, 96 P.3d 862 (Or. App.), review denied, 103 P.3d 641 (Or. 2004), leads to a different result, however. In that case, the Oregon Court of Appeals held that, when read in conjunction with its implementing rules, the statute also permits a civil remedy for retaliation or discrimination "against an employee for inquiring about OFLA leave, submitting a request for OFLA leave, or in any way invoking the provisions of OFLA." Yeager, 96 P.3d at 865.

Under Yeager, plaintiff's claim is cognizable because it asserts that the city failed to reinstate her, thereby depriving her of an OFLA right under Or. Rev. Stat. § 659A.171, in violation of the statute's implementing rule. See Or. Admin. R. § 839-009-0320(3) ("It is an unlawful employment practice for an employer to retaliate or in any way discriminate against any person with respect to hiring, tenure or any other term or condition of employment because the person has inquired about OFLA leave, submitted a request for OFLA leave or invoked any provision of [OFLA].").

19 Opinion and Order

In an unpublished opinion of a Ninth Circuit panel, the court adduced Yeager's reasoning to determine that retaliation claims are cognizable under OFLA. Denny v. Union Pacific R. Co., 173 Fed. Appx. 549, 551 (9th Cir. 2006). This district, however, has in certain cases declined to follow Yeager based on (1) the fact that it is an opinion of an intermediate court, and therefore less authoritative, and (2) disagreement with its reliance on an administrative rule that the arguably exceeds the scope of the authorizing statute. See, e.g., Mortensen v. Pacificorp, No. CV-06-541-HU, 2007 WL 405873, *16 (D. Or., Feb 01, 2007); Alexander v. Eye Health Northwest, P.C., No. CV-05-1632-HU, 2006 WL 2850469, *5 (D. Or., Oct 03, 2006); Stewart v. Sears, Roebuck and Co., NO. CV-04-428-HU, 2005 WL 5142285, *2 (D. Or. Apr 15, 2005); but see Spees v. Willamina Sch. Dist. 30J, No. CV-03-1425-KI, 2004 WL 2370642, *8 (D. Or., Oct. 19, 2004) (following Yeager to allow an OFLA claim).

Because the reasoning of Yeager has been acknowledged by the Ninth Circuit notwithstanding contrary decisions in this district and would enable plaintiff to state a claim for failure to reinstate under OFLA, I proceed on the assumption that such a claim would obtain under OFLA.

For the reasons explained above in my discussion of plaintiff's FMLA claims, there exists a genuine issue of material fact concerning whether plaintiff was not reinstated in violation of OFLA. Summary judgment on this claim is denied.

Safe Workplace Retaliation

Former Or. Rev. Stat. section 654.062(5) (2005) stated, "It

20 Opinion and Order

is an unlawful employment practice for any person to bar or
discourage from employment or otherwise discriminate against any
employee or prospective employee because the employee or
prospective employee has . . . [o]pposed any practice forbidden
by ORS 654.001 to 654.295 and 647.750 to 654.780 [which prohibit
maintenance of unhealthy work environments]".    "[I]f [a]
plaintiff can establish that he suffered discrimination at his
employment because he made a complaint 'related to' safe and
healthful working conditions, he has met the elements necessary
to establish a claim under ORS 654.062(5)(a)."  Butler v. State,
Dept. of Corrections, 909 P.2d 163, 201 (Or. App. 1995).    In
this case, plaintiff asserts that her termination was motivated
by her complaints about unhealthful air quality at City Hall,
which gave rise to OSHA inspection and air quality testing.

    As an initial matter, defendant contends that the claim is
untimely.   Specifically, defendant asserts that plaintiff did
not file a BOLI complaint within 30 days as required by former
Or. Rev. Stat. § 654.062(6)(a), which stated in part:

> Any employee or prospective employee alleging to have
> been barred or discharged from employment or otherwise
> discriminated against in compensation, or in terms,
> conditions or privileges of employment, in violation of
> subsection (5) of this section may, within 30 days after
> the employee or prospective employee has reasonable cause
> to believe that the violation has occurred, file a
> complaint with the Commissioner of the Bureau of Labor
> and Industries alleging discrimination under the
> provisions of ORS 659A.820.

However, the date of the filing a BOLI complaint is not material
here, where plaintiff does not rely on the complaint to toll the
one-year limitation period in former Or. Rev. Stat. § 654.062(6)(c)

21 Opinion and Order

(2005), and where plaintiff filed within the statutory period.[8]

Because plaintiff's claim is timely, I turn to whether the record discloses a genuine issue of material fact concerning whether plaintiff (1) suffered discrimination at her employment, (2) because she made a complaint 'related to' safe and healthful working conditions. The record indicates that plaintiff made several complaints related to the air quality at her workplace beginning in late 2006, which led the city to hire an industrial hygienist to test the air and also led to plaintiff's husband filing an OSHA complaint and investigation. Thereafter, plaintiff was terminated ostensibly because the city could not accommodate what it perceived to be onerous work release conditions. Plaintiff has established a prima facie case on this claim.

A federal court sitting in diversity or exercising supplemental jurisdiction over state law claims must apply state substantive law, but a federal court applies federal rules of procedure to its proceedings. Gasperini v. Ctr. for Humanities, Inc., 518 U.S. 415 (1996); see also Erie R.R. Co. v. Tompkins, 304 U.S. 64, 92, (1938) (Reed, J., concurring in part) ("[N]o one doubts federal power over procedure."). The Ninth Circuit has expressly held that the McDonnell Douglas burden-shifting paradigm is a federal procedural rule, which federal courts apply to summary judgment motions. Snead v. Metropolitan Property & Cas. Ins. Co.,

_____

[8] Defendant argues that former Or. Admin. R. § 839-003-0025 (2005), which states that a person alleging OSEA discrimination "must" contact the division within 30 days of having reasonable cause that a violation occurred, makes the filing of the BOLI complaint a necessary prerequisite to plaintiff's civil case. Here, plaintiff filed her BOLI complaint in advance of the city's January 8, 2007, letter of termination. Thus, even if the filing of a BOLI complaint is a required prerequisite, I consider it timely.

22 Opinion and Order

237 F.3d 1080, 1092 (9th Cir. 2001).  Thus, the court applies burden shifting in its analysis of plaintiff's state statutory discrimination claims.

As explained above, the record supports an inference that the city's purported explanation for plaintiff's termination served as a pretext for other, unstated reasons.  The possible pretextual basis for her termination, along with the proximity in time between plaintiff's series of reports concerning the air quality at her work place and her termination could support an inference that plaintiff suffered discrimination in the workplace because she made a complaint related to healthful working conditions.  Summary judgment on this claim is denied.


Workers' Compensation Discrimination

Under Or. Rev. Stat. section 659A.040, a plaintiff establishes a claim for workers' compensation retaliation upon showing that (1) she invoked a right under the workers' compensation scheme, (2) was discriminated against in the tenure, terms, or conditions of employment, and (3) the invocation of a workers' compensation right was a substantial factor in the adverse employment action.  Head v. Glacier Northwest, Inc., 413 F.3d 1053, 1063 (9th Cir. 2005); McPhail v. Milwaukie Lumber Co., 999 P.2d 1144 (Or. App. 2000).[9]

Concerning plaintiff's prima facie case, it is clear that she submitted a workers' compensation claim and was subsequently terminated.  However, plaintiff has failed to demonstrate a genuine issue of material fact concerning causation, i.e., that her claim

_____

[9] Because plaintiff has not met her burden in the prima facie case for her workers' compensation discrimination claim, burden-shifting is not triggered.

23 Opinion and Order

1  was a substantial factor in the city's decision to terminate her.

2  Plaintiff points to no adverse reaction by agents of the city to

3  her decision to file a claim, and she does not direct the court to

4  any evidence in the record that would raise an inference on

5  causation.  In the absence of any issue of fact on this element,

6  summary judgment on plaintiff's workers' compensation

7  discrimination claim is granted.

8

9  Wrongful Discharge

10      Plaintiff further alleges that she was wrongfully terminated

11  for exercising her rights (1) to work in a safe environment; and

12  (2) for taking medical leave.  Defendant argues that plaintiff's

13  wrongful termination claim is preempted by the availability of

14  statutory remedies and summary judgment is therefore warranted.

15      Oregon law understands wrongful discharge as "an interstitial

16  tort, designed to fill a remedial gap where a discharge in

17  violation of public policy would be left unvindicated." Dunwoody

18  v. Handskill Corp., 60 P.3d 1135, 1139 (Or. App. 2003).

19  Accordingly, a wrongful discharge claim is preempted by the

20  availability of statutory remedies where the legislature has

21  provided (1) a remedy "adequate to protect both the interests of

22  society . . . and the interests of employees," Brown v. Transcon

23  Lines, 588 P.2d 1087, 1095 (Or. 1978), (2) which the legislature

24  intended "to abrogate or supersede any common law remedy for

25  damages," Holien v. Sears, Roebuck and Co., 689 P.2d 1292, 1300

26  (Or. 1984).  Where "the statute is silent with respect to the

27  legislature's intent . . . in the absence of an explicit statement,

28  the existence of adequate remedies can be seen implicitly to

24 Opinion and Order

1    establish exclusivity." <u>Olsen v. Deschutes County</u>, 127 P.3d 655,

2    661 (Or. App.), <u>rev. denied</u>, 136 P.3d 1123 (Or. 2006).  "[U]nder

3    Oregon law, an adequate existing federal remedy may bar a common

4    law wrongful discharge claim." <u>Draper v. Astoria School Dist. No.</u>

5    <u>1C</u>, 995 F. Supp. 1122, 1131 (D. Or. 1998).

6         Here, defendant contends that wrongful termination based on

7    retaliation for taking medical leave or reporting unsafe working

8    conditions is preempted by the availability of a full complement of

9    federal statutory remedies available to plaintiff in her separate

10   ADA claim based on disability discrimination.

11        Plaintiff responds by stating that the wrongful discharge

12   claim is instead based on plaintiff's termination due to (1) her

13   invocation of her right to work in a safe environment, and (2) her

14   use of medical leave.   Plaintiff argues that statutory remedies

15   for those violations do not account for all relief that would be

16   available in a wrongful discharge claim.   Thus, in plaintiff's

17   view, the wrongful termination is not preempted.

18        Unless the legislature has abrogated the claim explicitly,

19   wrongful discharge is preempted only where the particular interest

20   asserted as the basis for the wrongful termination claim can be

21   adequately redressed by available statutory remedies.  <u>See</u>, <u>e.g.</u>,

22   <u>Minter v. Multnomah County</u>, 2002 WL 31496404, at *14 (D. Or., May

23   10, 2002) (Findings and Recommendation adopted June 25, 2002)

24   (wrongful discharge claim preempted where section 1983 claim was

25   based on the same underlying conduct and protected same interest).

26   Here, the remedies for disability discrimination do not address the

27   interests invoked as the basis for plaintiff's wrongful termination

28   claim, viz., workplace safety and use of medical leave.

25 Opinion and Order

To the extent that it is based on a complaint about workplace safety, plaintiff's tort claim is not preempted by applicable provision of the Safe Workplace Act, which did not permit compensatory and punitive damages at the time of the alleged misconduct. See former Or. Rev. Stat. § 654.062 (2005) and Cantley v. DSMF, Inc., 422 F. Supp. 2d 1214, 1222 (D. Or. 2006) (statutory remedy that provides no consequential damages is per se inadequate). Plaintiff's discharge claim based on use of medical leave is not preempted by FMLA or OFLA which do not provide for consequential damages. See Or. Rev. Stat. § 659A.150; Farrell v. Tri-County Metropolitan Transp. Dist. of Or., No. CV 04-296-PA, 2006 WL 1371656, *1 (D. Or., May 15, 2006)("FMLA does not authorize an award of "general" or "non-economic" damages for emotional distress, in which a jury attempts to place a monetary value upon intangibles such as the plaintiff's pain, suffering, humiliation, aggravation, or loss of dignity."). Plaintiff's wrongful discharge claim is therefore not precluded as a matter of law.

I turn now to the question whether the record discloses a genuine issue of material fact concerning whether plaintiff was wrongfully terminated. A plaintiff prevails on a wrongful termination claim where the employer terminated the plaintiff's employment because plaintiff exercised an employment-related right of important public interest or performed an important societal obligation. Patton v. J.C. Penney Co., Inc., 719 P.2d 854 (Or. 1986). Defendant does not dispute that ensuring a safe workplace or using statutorily provided medical leave are exercises of employment-related rights that implicate the public interest.

Regarding wrongful termination based on defendant's alleged

26 Opinion and Order

retaliation for workplace safety complaints, the same facts discussed above that raise a triable issue in plaintiff's OSEA claim would preclude summary judgment on a wrongful termination claim. Furthermore, regarding wrongful termination based on defendant's alleged retaliation for taking FMLA leave, the same facts discussed above that raise a triable issue in plaintiff's FMLA retaliation claim would also preclude summary judgment on plaintiff's wrongful termination claim. In sum, summary judgment on plaintiff's wrongful termination claim is denied.

<u>CONCLUSION</u>

Defendants' Motion for Summary Judgment (#22) is granted on plaintiff's workers' compensation claim and otherwise denied. Defendants' Amended Motion to Strike (#47) is denied.


Dated this 30ᵀ day of May, 2008.

THOMAS M. COFFIN
United States Magistrate Judge