FILED '09 MAR 04 09:40 USDC-ORE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| DIANE L. SANDERS, ) | |
| ) | |
| Plaintiff, ) | Civ. No. 07-0776-TC |
| ) | |
| v. ) | Amended Opinion and Order |
| ) | |
| CITY OF NEWPORT, an Oregon ) | |
| Municipal Corporation, ) | |
| ) | |
| Defendant. ) | |

Coffin, Magistrate Judge:

Before the court is plaintiff's Oregon Family Leave Act claim (#1). For the following reasons, the court finds that plaintiff proved by a preponderance of the evidence that defendant refused, without reasonable cause, to reinstate her after she took family medical leave pursuant to the Oregon Family Leave Act (OFLA), ORS 659A.171(1) and 659A.183(2).

## Background

Plaintiff brought several federal and state claims against defendant stemming from her discharge from employment. After a jury trial, a defense verdict was returned on all claims tried to the jury.

Two state law claims, however, were tried to the court: plaintiff's OFLA claim and her claim alleging retaliation for

1 Opinion and Order

complaining about workplace safety. This court found for defendant on the retaliation claim under ORS 654.062(5)(b), stating that there was no evidence presented at trial from which a reasonable inference could be drawn that plaintiff was discharged because she complained or caused a complaint to be filed about workplace safety. The parties were directed to submit additional briefing on plaintiff's OFLA claim.

## Standard

The relevant portion of OFLA states that, "[a]fter returning to work after taking family leave under the provisions of ORS 659A.150 to 659A.186, an eligible employee is entitled to be restored to the position of employment held by the employee when the leave commenced if that position still exists . . . ." Furthermore, ORS 659A.183 prohibits denying family leave to an eligible employee ("A covered employer who denies family leave to an eligible employee in the manner required by ORS 659A.150 to 659A.186 commits an unlawful employment practice.").

## Factual Findings

The evidence pertinent to plaintiff Diane Sanders' remaining OFLA claim can be succinctly stated: plaintiff was employed by the City of Newport (City) for approximately ten years in the finance department, generating water and utility bills for the

City's customers. After the City moved its office location and changed its supplier for the billing paper, plaintiff began experiencing symptoms from handling the newly supplied paper to print the bills. Her physician, Dr. Joseph Morgan, diagnosed her as suffering from multiple chemical sensitivity (MCS), and believed that her condition was triggered by her handling of low-grade paper at her workplace, as well as poor air quality in her workroom. Pursuant to Dr. Morgan's advice, Sanders requested and received medical leave to see if her health would improve after being removed from her work environment. The parties agree that the leave qualified as family medical leave under OFLA. After approximately one month, Dr. Morgan concluded that Sanders had largely recovered from her exposure to toxins, but he remained concerned about air quality in the work building and, thus, in a letter dated February 24, 2006, advised the City that she would be unable to work in the building until it could be established that the air quality no longer made her ill. Defendant's Ex. 106.

Two months later, however, on April 28, 2006, Dr. Morgan sent the City a follow-up letter in which he stated that Sanders was feeling better and that she could return to work in May, provided that she would handle only 97 bright paper (later

clarified to 92 bright paper)[1], and that there be improved ventilation in her work environment. Defendant's Ex. 109.

The City did not reinstate Sanders in May and another exchange of letters occurred in June. Thus, Dr. Morgan again sent the city a letter on June 5, 2006, stating that plaintiff was "anxious to return to work" and that "[p]rogress to date" suggested that her "hypersensitivity reactions" could very likely be controlled by "avoidance of the exposure which was originally incriminated, i.e., 84 [b]right paper." Dr. Morgan released plaintiff to return to work if 84 bright paper could be "completely avoided" and her work area was well ventilated. He also recommended that 87 bright paper be replaced with at least 92 bright paper when the supply of 87 bright paper was exhausted because, although plaintiff tolerated 87 bright reasonably well, 92 bright or higher would be considered safest for her. Defendant's Ex. 114.

Nancy Boyer, the assistant city manager, asked for further clarification on June 16, stating that the City understood that plaintiff could tolerate 87 bright paper for a brief period, but that 92 bright or higher would be required for a safe work environment. The City also inquired of Dr. Morgan what medical condition caused plaintiff's paper sensitivity to 87 bright or

---

[1] The low quality paper that had apparently caused Sanders' initial symptoms was 84 bright paper, which the City had ceased using shortly after Sanders went on medical leave.

lower, what the exact element was that caused her condition and whether it could also be present in other materials in the workplace. Defendant's Ex. 115. Dr. Morgan confirmed the City's understanding of a safe paper grade for plaintiff, and responded that plaintiff had become sensitized to "some product or products contained in the incriminated paper," but that without the ability to "obtain a precise chemical analysis of the various grades of paper," Dr. Morgan could not answer the question of what the chemical was. Neither could he determine whether other office chemicals might be a potential problem. Plaintiff's Ex. 21.

Based in large part on Dr. Morgan's inability to identify the precise chemical which caused Sanders' adverse reaction as well as his inability to eliminate other chemicals in the workplace which might trigger similar reactions, the City advised Sanders that it could not guarantee a safe working environment, and thus she would not be reinstated but was accordingly terminated.

## Legal Discussion

### 1. Seventh Amendment Issue

Defendant contends that the federal Family Medical Leave Act (FMLA) claim which was tried to the jury was based on the precise same facts as the OFLA claim, and that the Seventh Amendment bars the court from disregarding the jury's findings of fact.

Defendant cites <u>Miller v. Fairchild Indus., Inc.</u>, 885 F.2d 498, 507 (9th Cir. 1989), and <u>Los Angeles Police Protective League v. Gates</u>, 995 F.2d 1469, 1473 (9th Cir. 1993). Those cases stand for the proposition that when legal claims are tried by the jury and equitable claims by the judge, and the claims are based on the same facts, in deciding the equitable claims the Seventh Amendment "requires the trial judge to follow the jury's implicit or explicit factual determinations." <u>Miller</u>, 885 F.2d at 507.

However, the court's findings of fact are no different from the jury's findings in this case. The facts at issue on the OFLA claim and the FMLA claim are virtually undisputed: plaintiff took medical leave and was denied reinstatement because the City did not know the precise nature of the chemical or chemicals that had caused her to become ill and thus did not know if she would become ill again from something in the workplace if she were reinstated. Accordingly, the City terminated her employment. Those are the facts, and nothing in my findings is inconsistent with the jury's findings.

The real issue here is whether those facts constitute "reasonable cause" to deny reinstatement after Sanders was cleared by her treating physician to return to work. That issue implicates a legal conclusion; it is analogous to a "probable cause" determination in a civil rights case involving an allegedly unlawful arrest wherein the existence of probable cause

is a function of the facts, but itself is not a "fact"; it is rather a legal standard that is either met or not depending on the factual basis for the arrest. See State v. Miller, 191 P.3d 651, 658 (Or. 2008) ("Whether probable cause has properly preceded an arrest . . . is not a question of fact; it is a question of law."). Thus the Seventh Amendment is no bar to the court coming to a different conclusion regarding whether the facts created a "reasonable cause" to deny reinstatement.

### 2. Whether a "Failure to Reinstate" Claim is Available under OFLA

Plaintiff bases her OFLA "failure to reinstate" claim on ORS 659A.171(1):

> <u>After returning to work</u> after taking family leave under the provisions of ORS 659A.150 to 659A.186, an eligible employee is entitled to be restored to the position of employment held by the employee when the leave commenced if that position still exists, without regard to whether the employer filled the position with a replacement worker during the period of family leave. (Emphasis supplied).

Defendant argues that, based on the plain language of the statute, plaintiff was only entitled to be restored to her position "after returning to work," which never happened in this case because the City discharged her and did not allow her to return to work.

The City's reading of this section of OFLA has the effect of gutting the statute of any force. Although an employer would be

7 Opinion and Order

required to grant medical leave when requested, the employee's return to work would be entirely subject to the employer's discretion, so long as the employee was discharged before she actually returned. I decline to adopt an interpretation that would nullify a vital part of the legislative scheme-i.e., restoration of employment after medical leave if the employee's position still exists-and which would render the restoration right entirely illusory.

The Oregon Bureau of Labor and Industries (BOLI) has provided regulatory guidance which likewise supports rejection of defendant's interpretation of ORS 659A.171. Thus OAR 839-009-0270 provides:

> (1) An employer **must** restore an employee returning from OFLA leave, including intermittent and alternative duty leave, to the employee's former position if the job still exists, even if it has been filled during the employee's OFLA leave. (Emphasis supplied).

Further, the reasoning set forth in <u>Yeager v. Providence Health System Oregon</u>, 96 P.3d 862, (Or. App. 2004), lends additional support to the proposition that a "failure to reinstate" claim is available under OFLA. In that case, the Oregon Court of Appeals held that, when read in conjunction with its implementing rules, the statute also permits a civil remedy for retaliation or discrimination "against an employee for inquiring about OFLA leave, submitting a request for OFLA leave, or in any way invoking the provisions of OFLA." <u>Yeager</u>, 96 P.3d

8 Opinion and Order

at 865.

Under <u>Yeager</u>, plaintiff's claim is cognizable because it asserts that the City failed to reinstate her, thereby depriving her of an OFLA right under ORS 659A.171, in violation of the statute's implementing rule. <u>See</u> Or. Admin. R. § 839-009-0320(3) ("It is an unlawful employment practice for an employer to retaliate or in any way discriminate against any person with respect to hiring, tenure or any other term or condition of employment because the person has inquired about OFLA leave, submitted a request for OFLA leave or invoked any provision of [OFLA].").

Accordingly, I find that a "failure to reinstate" claim is available under the OFLA, and that defendant's discharge of plaintiff in advance of her actual return to the workplace is not by itself a defense to the claim.

### 3. Was defendant's failure to reinstate reasonable under the circumstances?

An employer may legitimately refuse to reinstate an employee after the employee returns from OFLA leave under some circumstances. The employer must be able to show that an employee would not otherwise have been employed at the time reinstatement is requested in order to deny restoration. For example, the employee may have been laid off during the leave, a shift may have been eliminated, the discrete project that the

9 Opinion and Order

employee was hired for may cease, or the employee may have been a "key employee" whose job elimination was "necessary to prevent substantial and grievous economic injury to the operations of the employer." See 29 C.F.R. 825.216; infra note 2.

When an employer refuses to reinstate even after receiving a doctor's note clearing the employee to return to work, however, courts have held that action unreasonable. In Underhill v. Willamina Lumber Co., No. Civ. 98-630-AS, 1999 WL 421596, at *1 (D. Or. May 20, 1999), the employee had been cleared by his doctor to return to work after FMLA leave,[2] but the employer refused to allow him to return until the employer's "concerns over his condition had been addressed to [the employer's] satisfaction." The court stated that when the employer received a doctor's letter clearing plaintiff to return to work, the employer "had a duty to reinstate Plaintiff to his former position regardless of whether Defendant had concerns about Plaintiff's ability to do his job. The release was without restrictions and Defendant was obligated under the FMLA to honor the release." Id. at *7. The court noted that, under the FMLA and the ADA, an employer may seek an opinion on whether or not an

---

[2] There is a paucity of case law interpreting OFLA. The court thus looks to reported cases under the federal FMLA for guidance. See ORS 659A.186(2) (OFLA is to "be construed to the extent possible in a manner that is consistent with any similar provisions of the federal Family and Medical Leave Act of 1993.").

10 Opinion and Order

employee is "fit" for duty upon his return, but once that opinion comes back positive the employee has a right to be reinstated, regardless of the employer's lingering concerns. Id. Similarly, in Peterson v. Tri-County Metropolitan Transportation District of Oregon, No. CV-06-1828-ST, 2008 WL 723521, at *1 (D. Or. March 14, 2008), the court denied summary judgment to an employer on an FMLA claim when the employee had been cleared by a doctor to return to work.

The City's decision to terminate plaintiff after it received Dr. Morgan's advice that it was "reasonable for her to return to work in May, provided that she would handle only [92] bright paper and that there be improved ventilation in her work environment," was unreasonable under the circumstances. The City had already upgraded the paper it was using,[3] and improving the ventilation does not appear to have been an issue. Nonetheless, the City based its decision on Dr. Morgan's inability to identify the precise chemical which caused plaintiff's reaction as well as his inability to eliminate the possibility that other chemicals in the workplace might trigger similar reactions. The City in effect was seeking a return to work release from plaintiff's physician that assured the City that plaintiff would not become

---

[3] Although the City contended that it had no control over the quality of incoming paper (e.g., money or correspondence), Dr. Morgan never opined that such was a cause of plaintiff's allergic reaction as his focus was on the paper the City was using to print its water bills, which, as noted, had been upgraded.

11 Opinion and Order

ill again in the future from exposure to some unknown irritant that might be present in the workplace. As Allen O'Neal, the City Manager who made the ultimate decision to discharge Sanders, put it in his testimony at trial, "I was concerned about everything that was in the workplace for her given the fact that her doctor had said she had chemical sensitivities."

I cannot agree that an employee's treating physician is required to conduct the medical and chemical testing that would be necessary to address the City's concerns as a precondition to clearing the employee to return to work. Dr. Morgan had identified low-grade paper as the most likely cause of Sanders' illness, and as her treating physician was satisfied that she could return to work so long as the paper was upgraded (it had been) and the ventilation was adequate. The City's insistence that all potential allergens in the workplace be eliminated in advance of reinstatement imposed a condition on her taking of medical leave that was not only unduly burdensome,[4] but also would amount to a significant deterrence to the exercise of medical leave rights in the first instance. An employee diagnosed with MCS or a similar illness would certainly be dissuaded from requesting medical leave if she knew that her

---

[4] Implicit in the City's expectation that plaintiff's physician should have answered its inquiries is the notion that plaintiff should have borne the expense of the testing necessary to identify and eliminate potential allergens in the workplace.

12 Opinion and Order

reinstatement would be dependent on her demonstrating that nothing in the workplace would trigger future allergic reactions.[5]

### Damages

Plaintiff requests reinstatement, economic damages in the form of front and back pay and lost insurance benefits, and costs and fees. ORS 659A.885 limits plaintiff's economic damages to back pay "only for the two-year period immediately preceding the filing [of a BOLI complaint], or if a complaint was not filed before the action was commenced, the two-year period immediately preceding the filing of the action." ORS 659A.885(1). However, the court may also award any other equitable relief that it deems appropriate, and the statute provides that the remedies include "<u>but are not limited to</u> reinstatement or the hiring of employees with or without back pay." Id. (emphasis supplied).

Plaintiff filed this action on May 24, 2007. Her last day of paid employment with the City was on March 9, 2006. Thus, she lost $33,600 in back pay, a total of 14 months. Plaintiff's insurance costs during that time totaled $9,800. This court

---

[5] City Manager O'Neal, in his letter of February 20, 2007, affirming the City's decision to terminate Ms. Sanders, stated that "[e]ven if the City could limit its paper purchases to paper that you are not sensitive to, without knowing the extent of your sensitivities, the City cannot provide you with a workplace that is free of chemicals that <u>may trigger</u> a reaction." (emphasis supplied). Defendant's Ex. 121.

13 Opinion and Order

therefore awards plaintiff $43,400 in back pay and insurance costs.

The court declines to order reinstatement, but rejects defendant's contention that front pay is not available under the statute, which authorizes an award of "any other equitable relief that [the court] deems appropriate." See ORS 659A.885(1).

Plaintiff is currently employed, earning approximately $172 less per month than she was earning at her position with the City. She requests 12 years of front pay (which would bring her to retirement age) at $2,064 per year, for a total of $24,768.

Front pay has been described as "intelligent guesswork." Sellers v. Delgado Coll., 781 F.2d 503, 505 (5th Cir. 1986). Factors that courts have considered in determining the amount of a front pay award include: (1) the length of prior employment; (2) the permanency of the position held; (3) the nature of the work; (4) the age and physical condition of the employee; (5) possible consolidation of jobs; and (6) myriad other non-discriminatory factors which could validly affect the employer/employee relationship. Reneau v. Wayne Griffin & Sons, Inc., 945 F.2d 869, 871 (5th Cir. 1991).

Here, plaintiff had worked for the City for approximately 10 years, the position was permanent, the nature of the work was not physically demanding, there is no evidence that her job would have been consolidated or eliminated, and it is unknown whether

14 Opinion and Order

other factors might conceivably impact her employment relationship with the City if it were to continue. Her physical condition is a problematic factor, as she has been diagnosed with MCS, and it is certainly possible that her exposure to some unknown allergen in the workplace might have caused her to resign her employment with the City at some point if she had been reinstated. I do note, however, that Sanders was highly motivated to remain employed, and that relatively easy accommodations for her condition (such as moving a copy machine to a larger room, opening a door to allow better ventilation, upgrading the quality of paper used to print bills, etc.) may have allowed her to continue her employment with the City without significant interruption.

Certainly I am in no better position than her physician to opine whether Sanders might suffer an adverse reaction to some fume, odor, chemical, or other substance in the future had she remained employed by the City, nor can I say, with any degree of reasonable accuracy, what level of exposure might have caused her to become so ill that she could no longer work there. What I do conclude, however, is that she undoubtedly would have worked with her physician to address those issues and seek reasonable modifications of her work environment to continue her employment status.

Accordingly, I award 10 years of front pay, or $20,640 (the

difference between her current income and income from the City).

## Conclusion

The court awards $64,040, consisting of back pay, front pay, and insurance costs to plaintiff.

Dated this 4 day of March, 2009.

THOMAS M. COFFIN
United States Magistrate Judge